IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT J. ACCARDI | : | CIVIL ACTION |
| v. | : | |
| DUNBAR ARMORED, INC., ET AL. | : | NO. 13-1828 |

## MEMORANDUM

Padova, J.                                                                                                                                           August 13, 2013

Plaintiff Vincent J. Accardi filed this negligence action in the Court of Common Pleas of Philadelphia County against Defendants Dunbar Armored, Inc. ("Dunbar"), Marcus T. Cosby, and Antoine Edwards after a car Plaintiff was driving was hit by a Dunbar armored car driven by Cosby. Edwards was a passenger in the armored car. Plaintiff and Edwards are both Pennsylvania citizens, but Dunbar nevertheless removed the case to this Court on April 8, 2013, asserting that Edwards was fraudulently joined and that we therefore have diversity jurisdiction. Presently before the Court is Plaintiff's Motion to Remand, contesting Defendants' assertion of fraudulent joinder. For the following reasons, we grant the Motion to Remand.

## I. BACKGROUND

The Complaint alleges the following facts. On March 31, 2011, Cosby, a citizen of New Jersey, was driving an armored car, owned by Dunbar, a Maryland corporation. (Compl. ¶¶ 2-3, 9.) Edwards was Cosby's passenger, navigator, co-driver, and/or co-operator of the armored car, and was also serving as a security guard, delivery person, armored guard, and/or courier. (Id. ¶¶ 9, 52.) Both Cosby and Edwards were employees of Dunbar. (Id. ¶¶ 8-9.)

Cosby was traveling at an unsafe speed on Route 13 South when he belatedly noticed traffic stopped for a traffic signal ahead at Route 13's intersection with Beaver Dam Road in Bristol Township, Pennsylvania. (Id. ¶¶ 11-12.) At the time, Plaintiff was also driving his

vehicle on Route 13, heading south. (Id. ¶ 11.) Plaintiff's car was at a complete stop in the left turn lane at the Route 13/Beaver Dam Road intersection, with its left turn signal engaged. (Id.) Cosby attempted to stop quickly to avoid a collision with the stopped traffic in front of him, and lost control of the armored car. (Id. ¶ 13.) In doing so, the armored car crossed over into the left turn lane, where Plaintiff's car was at a standstill, and crashed into the right rear of Plaintiff's car. (Id.) The impact of the collision caused Plaintiff's vehicle to spin around, forcing it into the left lane of Route 13 North, where it collided with a third vehicle that was traveling northbound on Route 13 North. (Id. ¶ 14.) Plaintiff suffered permanent life-altering injuries and his car was deemed a total loss as a result of the collision. (Id. ¶¶ 17-18.)

Following the accident, Plaintiff commenced a civil action in the Philadelphia Court of Common Pleas against Dunbar, Cosby, and Edwards, asserting claims of negligence against all three Defendants. He rests his claim against Edwards, the sole non-diverse defendant, on assertions that Edwards breached numerous duties as a passenger, including duties to help and assist the driver, to pay full attention to the road, to warn the driver of hazards, to not cause a distraction, and to inspect the armored car for mechanical problems. Defendants filed a Notice of Removal on April 8, 2013, asserting that Plaintiff had fraudulently joined Edwards in order to defeat diversity jurisdiction. On May 7, 2013, Plaintiff filed his Motion for Remand.

## II. LEGAL STANDARD

"In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006). However, "the removing party carries a heavy burden of persuasion" in establishing fraudulent joinder. Batoff v. State Farm Ins. Co., 977 F.2d 848, 851

(3d Cir. 1992) (quotation and citation omitted). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant[s] or seek a joint judgment." Id. at 851 (quotation omitted).

"In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." Id. at 851-52 (quotation omitted). The court must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. at 852 (quotation omitted). Significantly, the court's inquiry into the validity of a complaint when faced with an assertion of fraudulent joinder is less searching than that triggered upon the filing of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. Thus, we will not find a defendant's joinder to be fraudulent "[s]imply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action." Lyall v. Airtran Airlines, Inc., 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000) (citation omitted). Rather, we will only find fraudulent joinder where the plaintiff's claims are "'wholly insubstantial and frivolous.'" Batoff, 977 F.2d at 852 (quoting Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989)). "In other words, a finding of fraudulent joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility." West v. Marriott Hotel Servs., Inc., Civ. A. No. 10-4130, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010). "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." Id. (citing Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). "[I]f there is even a possibility that a state court would find that the

complaint states a cause of action against [a] resident defendant[], the federal court must find that joinder was proper . . . ." Briscoe, 448 F.3d at 217 (quoting Batoff, 977 F.2d at 851).

If we determine that a defendant's joinder was fraudulent, we can "disregard, for jurisdictional purposes, the citizenship of [the] nondiverse defendant[], assume jurisdiction over [the] case, dismiss the nondiverse defendant[], and thereby retain jurisdiction." Briscoe, 448 F.3d at 216 (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)). On the other hand, if we determine that we do not have subject matter jurisdiction over the action because joinder of the non-diverse defendant was not fraudulent, we must remand the case to state court. Id. (citing 28 U.S.C. § 1447(c)).

## III. DISCUSSION

Plaintiff argues in his Motion that we should remand the case to the Philadelphia Court of Common Pleas because we lack diversity jurisdiction insofar as both he and Edwards are Pennsylvania citizens. (Mot. for Remand ¶ 3.) Plaintiff specifically disputes Defendants' assertion that Edwards was fraudulently joined and asserts to the contrary that he has a colorable negligence claim against Edwards. (Id. ¶¶ 4, 6, 13.) As stated above, Defendants have a "heavy burden of persuasion" when asserting that a defendant has been fraudulently joined. Briscoe, 448 F.3d at 217. Here, Defendants argue that Plaintiff has no basis in fact or colorable ground to support his claim against Edwards, because Pennsylvania law provides no right of action against Edwards, who was merely a passenger in the Dunbar vehicle.[1]

Under Pennsylvania law, the general rule is that "a passenger owes no duty to protect third-persons or other passengers from the negligent acts of the driver." Welc v. Porter, 675

---

[1] Defendants do not argue that Plaintiff has "no real intention in good faith to prosecute the action against the defendant[s] or seek a joint judgment." Batoff, 977 F.2d at 852. Consequently, we need not address that alternative basis for a finding of fraudulent joinder.

A.2d 334, 338 (Pa. Super. Ct. 1996) (citing cases). There are, however, exceptions to this general rule for circumstances in which the driver is the servant or agent of the passenger, where the driver and the passenger are engaged in a joint enterprise, and/or where the passenger had the "'right to share in the control the vehicle.'" Id. at 340 (quoting Rodgers v. Saxton, 158 A. 166, 169 (Pa. 1931)). When any of these exceptions are proven, the negligence of the driver will be imputed to the passenger. Id. (quoting Rodgers, 158 A. at 169). In the instant case, Plaintiff maintains that Edwards and Cosby were not only engaged in a joint enterprise of the business of armored truck transportation, but also shared a right to control the armored car. (See Mot. for Remand ¶ 26.)

Whether or not a passenger has a right to control a vehicle is a legal question, but the resolution of that question depends upon the facts involved in any particular case. Bock v. Baker, 44 Pa. D. & C.3d 60, 68 (Armstrong Cnty. Ct. Common Pleas 1987). Notably, an individual's "right to control" is not exclusively dependent on whether the individual owns the vehicle or, absent ownership, whether the individual has the "absolute right to control who could drive [the vehicle]"; rather, the test is "who was in charge of the actual operation of the vehicle at the time of the accident." Kocher v. Creston Transfer Co., 166 F.2d 680, 686 (3d Cir. 1948). Similarly, although an individual's "authority to direct where to drive may be taken into consideration[,] that authority alone is insufficient to resolve the controversy." Id. (citing Harris v. E. Oostdyk Motor Transp. Corp., 17 A.2d 347 (Pa. 1941)). In the end, the United States Court of Appeals for the Third Circuit has stated that the test as to whether a passenger has the right to control a vehicle, "[i]n pragmatic language," is whether the passenger "has any right or authority to give orders or directions to the driver for the operation of the vehicle, or alternately, whether the driver is under a duty to obey any directions which the passenger might attempt to give with

5

respect to where the automobile should be driven, or in what manner it should be used or operated." Id. (citing Mork v. Caslov, 192 A. 903 (1937)).

Defendants concede that Pennsylvania law provides that "liability can be imputed to a passenger in a vehicle in . . . limited circumstances." (Defs.' Resp. to Mot. for Remand at 6.) They nevertheless argue that, under the circumstances presented in this case, Plaintiff cannot establish any of the prerequisites to the imposition of passenger liability, including that Edwards had a right to control the armored car. In support of their assertion that Plaintiff cannot state a colorable claim against Edwards based on a right to control, Defendants rely almost exclusively on a declaration from Cosby, which states that Edwards was a back seat passenger who in no way influenced Cosby's operation of the armored car. (Not. of Removal ¶¶ 16, 18.)

As noted above, in evaluating a claim of fraudulent joinder, we are to "focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." Batoff, 977 F.2d at 851-52 (quotation omitted). Defendants nevertheless maintain that we can look beyond the facts alleged in the Complaint and consider Cosby's declaration in connection with our analysis. In support of this assertion, they cite to two cases: Briscoe and Weaver v. Conrail, Civ. A. No. 09–5592, 2010 WL 2773382 (E.D. Pa. July 13, 2010). However, the only evidence that the trial courts in Briscoe and Weaver considered in assessing fraudulent joinder was evidence that was either developed in prior proceedings or evidence subject to judicial notice. Weaver, 2010 WL 2773382, at *9 (noting that all of the evidence that the court considered was evidence "of which the Court may take judicial notice"); Briscoe, 448 F.3d at 219-21 (finding that the district court committed no clear error of law in considering, in fraudulent joinder analysis, evidence established from prior proceedings and facts subject to judicial notice). In addition, both cases make it clear that that

6

any review of "extrinsic evidence must be limited to reliable evidence that does not go to the merits of the plaintiff's case." Weaver, 2010 WL 2773382, at *6; see also Briscoe, 448 F.3d at 221 (emphasizing that a limited review of the record from prior proceedings and matters properly subject to judicial notice does "not risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits"). Thus, we find that neither case supports a conclusion that we can consider Cosby's declaration, which is neither evidence from a prior proceeding nor evidence subject to judicial notice, and which goes directly to the merits of Plaintiff's claims.

There is, however, some caselaw in this District that supports the proposition that, in very limited circumstances, we are authorized to consider affidavits when deciding a question of fraudulent joinder. That caselaw suggests that an affidavit can be pertinent to our fraudulent joinder inquiry if it presents undisputed facts that establish "with complete certainty" that the non-diverse defendant has no liability. Yellen v. Teledne Cont'l Motors Inc., 832 F. Supp. 2d 490, 504 (E.D. Pa. 2011) (citing Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967)). Typically, we may consider such affidavits only if they "completely divorce[] the challenged defendant from the allegations" in the complaint. Lyall, 109 F. Supp. 2d at 368 n.8 (discussing Smoot, 378 F. Supp. 2d at 881-82); see also Weaver, 2010 WL 277382, at *7 (stating that a court conducting a fraudulent joinder analysis may consider "the absence of proof of a defendant's involvement in claimed conduct" (citations omitted)).

Here, Cosby states in his declaration that Edwards' presence "in the back seat of the Dunbar vehicle did not cause the vehicle [he] was operating to strike the Plaintiff's vehicle," and that "Edwards also did not adversely affect, impact or influence [his] operation of the Dunbar vehicle prior to the subject accident." (Cosby Decl. ¶¶ 9-10.) While these factual assertions

arguably support a conclusion that Edwards did not influence Cosby's driving and did not cause the accident at issue, they do not "completely divorce" Edwards from the allegations in the Complaint, at least insofar as they do not refute that Edwards was travelling with Cosby in the armored car at the time of the accident. Lyall, 109 F. Supp. 2d at 368 n.8 (citation omitted). Even more importantly, they do not speak to the determinative question under Pennsylvania law of whether Edwards had a "right to control" the armored car. As explained above, if Edwards shared in a right to control the vehicle, then any negligence by Cosby will be imputed to Edwards, thereby subjecting Edwards to liability. See Welc, 675 A.2d at 338 (citation omitted). The factual questions that must be resolved in order to determine if Edwards had a "right to control" the vehicle is whether Edwards had "any right or authority to give orders or directions to the driver for the operation of the vehicle, or alternately, whether the driver [was] under a duty to obey any directions which the passenger might attempt to give with respect to where the [vehicle] should be driven, or in what manner it should be used or operated." Kocher, 166 F.2d at 686 (quotation omitted). Because Cosby's declaration says nothing regarding Edwards's "authority to give orders or directions" and Cosby's duty to obey any such orders or directions, the declaration by itself cannot suffice to establish that Plaintiff does not have a colorable passenger liability claim against Edwards based on Edwards' right to control the vehicle. Thus, even if we were to consider Cosby's declaration pursuant to the standards set forth in Yellen and Lyall, we would reject Defendants' contention that Plaintiff has not stated a colorable claim in light of the facts set forth in the declaration.

Defendants alternatively contend that Plaintiff has not asserted a colorable claim under Pennsylvania law because there is a lack of "recent" authority that supports a claim against a passenger like Edwards. At the same time, however, Defendants have pointed to no recent

authority that specifically precludes Plaintiff's claim against Edwards. Indeed, in our view, the Superior Court's relatively-recent 1996 decision in Welc makes it clear that Pennsylvania law continues to recognize claims against passengers under a variety of circumstances, at least one of which may be implicated here. Although we concede that our "inquiry into Pennsylvania law has not been penetrating," we also understand that "it should not be," because a claim "which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." Batoff, 977 F.2d at 853. As long as there is "even a possibility that a state court would find that the complaint states a cause of action against [a] resident defendant[], [we] must find that joinder was proper." Briscoe, 448 F.3d at 217 (quotation omitted). We therefore reject Defendants' suggestion that a lack of "recent" Pennsylvania law recognizing a claim against a passenger in Edwards's position renders Plaintiff's claim "insubstantial and frivolous," such that it is not colorable. Id. at 218.

## IV.  CONCLUSION

For the reasons stated above, we conclude that Defendants have failed to meet their heavy burden of establishing fraudulent joinder. We therefore grant Plaintiff's Motion to Remand and remand the case to the Philadelphia Court of Common Pleas. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.